# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| AKREEM DICKS, | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| WARDEN TILLMEN, *et al.*, | : | NO. 19-3168 |
| Defendants. | : | |

## MEMORANDUM

**PRATTER, J.**                                                                       JANUARY 10, 2020

Plaintiff Akreem Dicks, a convicted prisoner currently incarcerated at SCI Frackville, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 and a Motion for Leave to Proceed *In Forma Pauperis*.[1] The complaint concerns conditions Mr. Dicks allegedly experienced while a pretrial detainee at the Philadelphia Detention Center ("PDC"). Named as Defendants are five PDC officials: Warden Tillmen, Assistant Deputy Warden Lacombe, Major Christmas, Lt. Simmons and Cpt. Peaks. For the following reasons, Mr. Dicks will be permitted to proceed *in forma pauperis,* and the Complaint will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[1] In a prior Order filed on December 18, 2019 (ECF No. 6), the Court dismissed this case without prejudice for failure to prosecute after Mr. Dicks missed the deadline imposed by the Court for submitting a copy of his certified inmate account statement. Approximately 19 days later, Mr. Dicks filed the statement. Considering the stated preference of the United States Court of Appeals for Third Circuit for disposing of matters on their merits rather than technicalities, *see Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984), the prior Order will be vacated.

## I. FACTUAL ALLEGATIONS

Mr. Dicks asserts that from November 13, 2018 to May 8, 2019, while incarcerated at PDC as a pretrial detainee,[2] he was housed under conditions of insufficient heat, was provided only one blanket, and had to sleep with clothes on. (ECF No. 2 at 5.)[3] In addition, there were mice and roaches, the dayroom was dirty, and he was exposed to second-hand smoke. (*Id.*) He also asserts there were insufficient toilets for the number of inmates in his area, the showers and air vents were dirty, and cleaning supplies were insufficient. (*Id.* at 8.) He alleges he required and received medical treatment for a "sickness" he suffered during the winter, and also received medicine for a headache he had due to the second-hand smoke. (*Id.* at 5.) He seeks damages in the amount of $7,720 for mental suffering, sickness from the cold conditions and the infestation. (*Id.* at 7-8.)

## II. STANDARD OF REVIEW

Because Mr. Dicks appears to be unable to pay the filing fee in this matter, the Court will grant him leave to proceed *in forma pauperis*.[4] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

---

[2] A review of publicly available records shows that Mr. Dicks was arrested on September 10, 2018 in Philadelphia on burglary and related charges. *Commonwealth v. Dicks*, CP-51-6854-2018 (C.P. Phila.) He entered a guilty plea on April 1, 2019.

[3] The Court adopts the pagination supplied by the CM/ECF docketing system.

[4] Because Mr. Dicks is a prisoner, under the provisions of the Prison Litigation Reform Act, he must still pay the filing fee in full in installments.

2

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Mr. Dicks is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Claims Based on Conditions of Confinement

Pretrial detainees are protected from "punishment" by the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Unconstitutional punishment typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 295, 298 (1991); *Bell*, 441 U.S. at 538-39, 539 n.20). In general, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Seiter*, 501 U.S. at 298-99; *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

3

### 1. Overcrowding

The overcrowded conditions Mr. Dicks describes are generally insufficient to state a plausible constitutional violation. *See Hubbard v. Taylor*, 538 F.3d 229, 236 & n.6 (3d Cir. 2008) (pretrial detainees do not have a right "to be free from triple-celling or from sleeping on a mattress placed on the floor."); *North v. White*, 152 F. App'x 111, 113 (3d Cir. 2005) (per curiam) ("Double or triple-bunking of cells, alone, is not per se unconstitutional."). Mr. Dicks has not stated a plausible constitutional violation because he has not alleged that the overcrowded conditions amounted to punishment, deprived him of a basic need, or otherwise caused him objective harm. *See Seiter*, 501 U.S. at 305 ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."); *Bell*, 441 U.S. at 542-43 (double-bunking did not violate constitutional rights of pretrial detainees when detainees had sufficient space for sleeping and use of common areas, and the average length of incarceration was 60 days); *Lindsey v. Shaffer*, 411 F. App'x 466, 468 (3d Cir. 2011) (per curiam) ("The critical issue for Eighth Amendment purposes [governing convicted prisoners] is not the number of prisoners who share facilities; rather, it is whether the alleged overcrowding has somehow harmed the prisoner."); *Hubbard*, 538 F.3d at 232-35 (triple-celling of pretrial detainees, some of whom were made to sleep on floor mattresses for three to seven months, and housing of detainees in gym, weight room, and receiving area due to overcrowding, did not amount to punishment); *see also Walker v. George W. Hill Corr.*, Civ. A. No. 18-2724, 2018 WL 3430678, at *3 (E.D. Pa. July 13, 2018) (concluding that prisoner plaintiff's claims that "he was forced to share a cell with two other individuals and that he was forced to sleep on the floor inside what was described as a boat unit" and that "his sleeping area was a very unhealthy and unsanitary space two feet from the toilet

4

bowl" failed to state a Fourteenth Amendment claim with respect to allegations of overcrowding).

### 2. Cold Temperatures, Uncleanliness, Vermin and Exposure to Second-hand Smoke

Mr. Dicks's bare allegations concerning cold temperatures, uncleanliness, the presence of vermin and exposure to second-hand smoke are also not plausible claims as pled. While the Constitution does not guarantee a right to be free from all discomfort, *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), courts have held that detainees have a right to adequate ventilation and to be free from extreme hot and cold temperatures. *See, e.g., Alpheaus v. Camden Cty. Corr. Facility*, Civ. A. No. 17-180, 2017 WL 2363001, at *13 (D.N.J. May 31, 2017). However, Mr. Dicks's conclusory allegation that his cell was cold and vermin-infested, with no further elaboration about the actual temperature conditions and the length of time the condition existed, is insufficient to state a plausible claim. The mere exposure to such conditions with, as here, no claim that they caused any significant harm, does not rise to the level of being objectively serious.

The Court cannot say, however, that Mr. Dicks can never state a plausible claim based on the cold temperature and vermin infestation conditions under which he was confined at PDC. *See, e.g., David v. Yates*, Civ. A. No. 15-6943, 2016 WL 5508809, at *7 (D.N.J. Sept. 27, 2016) (finding that a detainee's cold air claim stated a constitutional violation under the Fourteenth Amendment). *But see also Stokelin v. A.C.J.F. Warden*, Civ. A. No. 17-3484, 2018 WL 4357482, at *4 (D.N.J. Sept. 13, 2018) (holding that allegation that ventilation system was "no good" failed to state a claim where there was no allegation of any health problem as a result of the ventilation system); *Alpheaus*, 2017 WL 2363001, at *13 (dismissing with leave to amend allegation that summer heat conditions violated detainee's rights under objective component);

5

*see also Wilson v. Horn*, 971 F. Supp. 943, 945 (E.D. Pa. 1997) (holding that allegation cell was vermin-infested, extremely noisy, cold in the winter failed to meet objective standard); *Alexis v. U.S. Dep't of Homeland Sec.*, Civ. A. No. 05-1484, 2005 WL 1502068, at *10 (D.N.J. June 24, 2005) (permitting detainee's claim based on allegations of vermin-infested cell and poor ventilation to proceed). Accordingly, Mr. Dicks will be granted leave to file an amended complaint to attempt to cure the defects the Court has identified.

Claims based on environmental exposure to tobacco smoke during incarceration are generally analyzed as claims asserting deliberate indifference to serious medical needs. *See, e.g., Brown v. DiGuglielmo*, 418 F. App'x 99, 102-03 (3d Cir. 2011). Thus, to be plausible, a claim based on being exposed to dangerously high levels of environmental tobacco smoke must assert that prison authorities were deliberately indifferent to the exposure. *Laufgas v. Speziale*, 263 F. App'x 192, 197 (3d Cir. 2008) (affirming grant of summary judgment) (citing *Helling v. McKinney*, 509 U.S. 25, 35-37 (1993); *Glazewski v. Corzine*, 385 F. App'x 83, 89 (3d Cir. 2010) (claim must allege (1) a sufficiently serious medical need related to second hand smoke exposure; and (2) deliberate indifference by the prison authorities to that need). As with his other claims, Mr. Dicks does not set forth sufficient facts that, if accepted as true, would establish a plausible claim that he suffered a serious medical need and that officials were deliberately indifferent. Indeed, he fails to even allege a serious medical need since he asserts only that he had a headache for which, he concedes, he received treatment. Accordingly, this portion of his claim will also be dismissed without prejudice and with leave to amend if Mr. Dicks is able to cure the defects the Court has identified.

### B. Claims Against the Named Defendants

Finally, even if Mr. Dicks was able to state plausible claims based on the conditions under which he was detained, his Complaint suffers from the additional defect that he has named

6

as defendants five supervisory officials at PDC without making any allegation describing how those particular officials acted or failed to act to violate his constitutional rights. Mr. Dicks also makes no allegation that any defendant was deliberately indifferent to a serious medical need that Mr. Dicks suffered due to his exposure to second-hand smoke or otherwise responsible for the challenged conditions.

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* Mr. Dicks makes no plausible allegation under either category upon which supervisory liability may be found.

## IV. CONCLUSION

For the reasons stated, the claims against all Defendants are dismissed without prejudice. Mr. Dicks is granted leave to file an amended complaint if he is able to correct the defects the Court has identified in his claims based on exposure to cold, uncleanliness, vermin infestation, and exposure to second-hand smoke and supervisor culpability. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER, J.

7